(LOCAL LAW.)

## Matson v. Hord.

The law of Kentucky requires, in the location of warrants for land, some general description designating the place where the particular object is to be found, and a description of the particular object itself. The general description must be such as will enable a person intending to locate the adjacent residuum, and using reasonable care and diligence, to find the object mentioned in that particular place, and avoid the land already located. If the description will fit another place better, or equally well, it is defective.

The Hunter's trace, leading from Bryant's station over to the waters of Hinkston, on the dividing ridge between the waters of Hinkston and the waters of Elkhorn," is a defective description, and will not sustain the entry.

APPEAL from a decree in chancery in the circuit court of Kentucky. This cause was argued by *Hughes* and *Talbot*, for the appellants, and *Hardin*, for the respondents. It was, principally, a question of fact arising under the local laws of real property in Kentucky, for an outline of which the general reader is referred to the APPENDIX, note I., where

will be found an exposition of the elementary prin-
ciples applicable to this class of causes.

MARSHALL, Ch. J., delivered the opinion of the
court, as follows:

This is an appeal from a decree of the circuit
court of Kentucky, by which the plaintiff's bill was
dismissed.

The object of the suit is to enjoin the proceedings
of the defendant at law, and to obtain from him a
conveyance for so much of the land contained in his
patent as interferes with the entry and survey made
by the plaintiff.

The plaintiff claims by virtue of an entry made
on the 17th of January, 1784, the material part of
which is set forth in the bill in these words: " Rich-
ard Masterson enters 22,277 and a half acres of
land, on treasury warrant No. 19,455, to be laid off
in a parallelogram twice as long as wide, to include
a mulberry tree marked thus, " F," and two hicco-
ries, with four chops in each, to include the said three
marked trees near the centre thereof; the said trees
standing near the Hunter's trace, leading from Bry-
ant's station over to the waters of Hinkston, on the
dividing ridge between the waters of Hinkston and
the waters of Elkhorn." This entry has been sur-
veyed, he states, according to location, and that part
of it which covers the land in controversy has been
assigned to him.

The validity of this entry constitutes the most es-
sential point in the present controversy. If it cannot
be sustained, there is an end of the plaintiff's title

1816.

Matson
v.
Hord.

if it can, other points arise in the case which must be decided.

This question depends on the construction of that clause in the land law which requires that warrants shall be located so specially and precisely, as that others may be enabled, with certainty, to locate other warrants on the adjacent residuum.

In the construction of an act so interesting to the people of Kentucky, it is of vital importance that principles be adhered to with care, and that as much uniformity as is practicable be observed in judicial decisions. This court has ever sought, with solicitude, for the true spirit of the law, as settled in the state tribunals, and has conformed its judgments to the rules of those tribunals whenever it has been able to find them established.

In the cases which have been, on different occasions, examined, that absolute certainty which would remove every doubt from the mind of a subsequent locator, appears never to have been required. The courts of Kentucky have viewed locations with that indulgence which the state of the country, and the general character of those who first explored and settled it, would seem to justify; and have required only that reasonable certainty which was attainable in such a country, and might be expected from such men as were necessarily employed. The effort has been to sustain rather than to avoid entries; and, although the motives which led to this course of adjudication are inapplicable to late entries, made on land supposed to be previously appropriated, yet it is not understood that different rules of construction

have ever been applied to entries of different dates.

By these rules, a certainty to a common intent, a description which will not mislead a subsequent locator, which will conduct him, if he uses reasonable care and diligence, to the place where the objects are to be found, will satisfy the law, and sustain the entry; but such a certainty must exist, or the entry cannot be sustained.

A location usually consists of some gener..i description which designates the place in which the particular object is to be found, and of a description of the particular object itself. The general description must be such as would enable a man intending to locate the adjacent residuum, by making those inquiries which would be in his power, and which he would naturally make, to know the place in which he was to search for the particular or locative call, so nearly, that, by a reasonable search, he might find the object mentioned in that particular or locative call, and avoid the land located. If the description will fit a different place better, or equally well, it is too defective, because, if it does not mislead the subsequent locator, it leaves him in doubt where to search.

The general description in this case is, " the Hunter's trace, leading from Bryant's station over to the waters of Hinkston, on the dividing ridge between the waters of Hinkston and the waters of Elkhorn."

Will this description designate the place in which the trees called for in the location are to be found ?

Bryant's station is a fixed place of public notoriety. It is on the great road leading from Lexington to Limestone, on the Ohio, which road crosses the dividing ridge between the waters of Elkhorn and Licking, which is the ridge mentioned in Masterson's entry. This road had been travelled by hunters, but seems to have been known by the name of the Blue Lick, or Buffalo trace, and not by the name of the Hunter's trace.

A trace which was, at the time, called the Hunter's trace, leaves this great road at Bryant's station, and proceeds in a direction west of north, until it crosses North Elkhorn, where it divides : the left-hand, or more western trace, after entering a road leading from Lexington to Riddle's station, on Licking, or that branch of Licking called Hinkston, crosses the dividing ridge about the head waters of a creek now called Townsend, which empties into the stream running by Riddle's station a little above that station. This creek was, in the year 1784, known by the name of Hinkston Creek, or, perhaps, Hinkston's Mill Creek.

The right, or more eastern fork, again divides nearly two miles before it reaches the dividing ridge. Each of these traces crosses the dividing ridge to the head waters of Cooper's run, which empties into Stoner's fork. The more eastern of them crosses Stoner's fork, and, passing Mastin's station, terminates very near that place. Cooper's run empties into Stoner's fork, which either empties into Hinkston, and then passing by Riddle's station, empties into Licking; or, uniting with Hinkston, forms the

south fork of Licking, and passes Riddle's station with that name. The river, from the junction between Stoner and Hinkston, seems to have been known both by the name of the South Fork and of Hinkston's Fork.

All these traces were, in fact, hunters' traces; but each of them, except that leading to Mastin's station, was distinguished by some name peculiar to itself, generally by the station or place to which it led, as Riddle's trace, the Blue Lick trace, &c.; and no one of them, except that leading to Mastin's, was notoriously and pre-eminently called " the Hunter's trace." There is some testimony that this was also known by the name of Mastin's trace; but the great mass of testimony in the cause proves, incontrovertibly, that this trace was known and distinguished, generally, by the peculiar appellation of " the Hunter's trace." It is on this trace that the location was made.

The Hunter's trace, then, used in such a manner as to satisfy those interested in the inquiry, that it was intended to be employed as the name of some particular trace, would have been considered as designating the trace leading from Bryant's to Mastin's station, and would have been sufficient to show that the lands located by Masterson were on that trace. Had no farther description of it been attempted, but the trees called for had been said to stand on " the Hunter's trace," where it crosses the dividing ridge between the waters of Hinkston and Elkhorn, it would have been clear that the trace was referred to by its name of greatest notoriety, by a name

which no other trace received; and, both the trace and the part of the trace where the objects specially called for must be found, would have been designated with sufficient certainty. There is no evidence in this cause, nor is the court apprized that any other trace, distinguished as " the Hunter's trace," led from any other place than Bryant's station, over the dividing ridge between the waters of Elkhorn and Hinkston, and, consequently, a reference to this trace, by its name, was all that was necessary for its designation, and would have designated it most unequivocally. But a farther description has been attempted, and this has produced the difficulty felt in deciding this cause.

It will not be pretended, that the locator was confined to this reference to the name, or might not add to the description, and make it more minute; but if, in doing so, he has destroyed its certainty, if he has created doubts with respect to the trace intended, which may mislead subsequent locators, the validity of his location becomes questionable.

The words added to " the Hunter's trace" are, " leading from Bryant's station over to the waters of Hinkston."

These words are not unmeaning, nor does the court feel itself authorized to reject them as surplusage; nor do they form any part of the name of the trace. Why, then, are they introduced? Subsequent locators might consider them as explanatory of the words " the Hunter's trace." If they are so explanatory, there is, certainly, much plausibility afforded to the conclusion, that the locator did not

mean to refer to the trace by its name; for if such was his intention, (there being no other trace of the same name,) a farther description would be unnecessary, and a more particular description would be impossible. Perplexity and confusion may be introduced, but an object cannot be rendered more certain than by bestowing on it its particular and appropriate name, if that name be one of general notoriety. The court felt the force of the argument, that " the Hunter's trace," leading from Bryant's station over to the waters of Hinkston, might be understood in the same sense with the words " the Hunter's trace," or, " that hunter's trace which leads from Bryant's station over to the waters of Hinkston." Understood in that sense, the additional and explanatory part of the description might be considered as its essential part, and might control the words " the Hunter's trace," which, connected as they are in this description, are not incapable of application to other hunters' traces, though not usually designated by that particular name. If this were to be received as the true construction, there are so many other traces leading across this dividing ridge, from Bryant's station to the waters of Hinkston, that all pretension to certainty, in this location, must be surrendered.

On this part of the case, the court has felt considerable difficulty; and it is not without hesitation, that it has finally adopted the opinion, that " the Hunter's trace" is to be considered as referred to by its name; and, that the additional words, " leading from Bryant's station over to the waters of Hinkston,"

are nearly an affirmation that " the Hunter's trace" does lead from that station to those waters. It leads to Stoner's fork, which empties into, or unites with, Hinkston's fork, which afterwards empties into the main Licking. These branches are, all of them, called forks of Licking, and, therefore, it would seem to the court reasonable, (as is indeed indicated by much of the testimony,) that this ridge was rather considered as dividing the waters of Elkhorn from those of Licking than from those of Hinkston. But Stoner's fork, to which this trace leads, may, without impropriety, be denominated, as it sometimes has been denominated, " the Waters of Hinkston."

It cannot escape notice, that if this trace had been designated as that leading to Mastin's station, it would have been freed from all ambiguity. But it has been decided in Kentucky, and necessarily so decided, that a locator ought not to be held to the most certain description of which the place is sus-ceptible. A description which distinguishes it from any other, although a better or still more certain description might be given, is all that is required.

Having, with much difficulty, ascertained the trace, the next inquiry is, on what part of this trace the land entered by Masterson ought to lie. The location says, generally, " on the dividing ridge be-tween the waters of Hinkston and the waters of Elkhorn." It has been objected, that neither the side of the ridge nor the side of the trace, is speci-fied; and that, to search both sides of the ridge and of the trace, is imposing an unreasonable labour on subsequent locators. The court does not think so.

1816.

Matson
v.
Hord

The ridge is not of such breadth as to render the search on both sides the trace, from the foot of the ridge on one side, to the foot of the ridge on the other, a very unreasonable one. But the trees must be found on the ridge, and a subsequent locator is not bound to search for them elsewhere. The trees having in themselves no notoriety, it is the more necessary that the place on which they stand should be correctly described, and so described, that persons interested in discovering them, might know how to find them. Let us then examine the testimony to this point.

Richard Masterson, who made the location, proves the place where the trees stood. They are now cut down, but a mulberry stump remains, which is the stump of the tree he marked, is No. 33., west three poles from a white oak, now standing. He gives no description of the place.

Henry Lee was with Masterson when he marked the trees, and saw him mark them. They had been hunting on the trace on Cooper's run; and, on their return, he says, " on the aforesaid trace, or path, *after crossing the dividing ridge*, near a small branch waters of Elkhorn, Richard Masterson marked," &c.

This testimony would rather indicate that, in the opinion of the witness, the trees did not stand on the ridge.

Simon Kenton describes the crooked oak mentioned by Masterson and Jay : " it does not stand on the dividing ridge." On being further interrogated he says, " he well believes that the crooked oak stands on ground which is a spur of the dividing

1816.

Matson
v.
Hord.

ridge which leads down to the junction of the branches," which unite a small distance below the mulberry stump.

In the course of his examination, this witness says, that if he could not have found these trees on the ridge, and had found them where they stood, he should have taken them for the trees called for in Masterson's entry; but in no part of his testimony does he indicate that he would have searched for them on the spur where they stood.

Zachariah Easton, the surveyor, gives a very accurate description of the place. The mulberry stump stands between two branches, three poles from the eastern, thirty poles from the western, and forty one poles from their junction. Along the trace, which crosses the branch several times, the stump is one hundred and ninety poles from the top of the ridge. The stump stands, not on the dividing ridge itself, but on a spur of the ridge, which does not continue along the trace, but takes a direction west thereof, and unites with the main ridge, as would seem from the plat, sixty or seventy poles west of the point at which the trace crosses it.

Not a single witness deposes that the stump is on the ridge.

No testimony has been offered to the court to induce the opinion that, in Kentucky, a spur of a ridge is considered as the ridge itself, and the contrary seems reasonable. Spurs sometimes extend for considerable distances, and are certainly distinguishable from the ridge from which they project. If, in this case, the trace had led up this spur, a subsequent

locator might have considered it as a continuation of the ridge. But the trace does not lead up the spur. It crosses a branch after passing the spur, and then comes to the ridge. The court is of opinion that subsequent locators could not be expected to continue their search after reaching the foot of the ridge, and that the description fails in stating the marked trees to be on the dividing ridge, instead of stating them to be on a spur of the dividing ridge.

The decree, therefore, dismissing the plaintiff's bill, is affirmed with costs.