SCHWARTZ et al. v. DUSS et al.

(Circuit Court, W. D. Pennsylvania. February 13, 1899.)

1. VOLUNTARY ASSOCIATIONS—VALIDITY OF AGREEMENT FOR COMMUNITY OF PROPERTY.

Written agreements, signed by the members of a voluntary society from time to time, which form the constitution of the society, and which provide for the community of property, and that neither a withdrawing member nor the representatives of one deceased shall have any claim on the society or its property on account of the contributions of such member thereto, constitute valid contracts, and no claim so arising is enforceable so long as the society continues in existence.

2. SAME—RIGHTS OF WITHDRAWING MEMBERS—LIMITATION.

Claims against the property of a voluntary society or community in favor of withdrawing members, if legal and enforceable, are barred by lapse of time where no attempt is made to enforce them for nearly 70 years after the withdrawal.

In Equity. Sur pleadings and evidence, report of master, and exceptions.

Shiras & Dickey and S. Schoyer, Jr., for complainants.
D. T. Watson and C. S. Fetterman, for defendants.

ACHESON, Circuit Judge. The plaintiffs sue as heirs of certain persons who were formerly members of the Harmony Society, and who continued to be members until their voluntary withdrawal or death. The bill is against all the persons who composed the society at the commencement of the suit, namely, June 27, 1894, the membership then embracing 16 persons. The bill joins, as co-defendants with the members of the Harmony Society, Henry Hice, John Reeves, and the Union Company, a corporation; the bill charging that these three defendants and the defendant John S. Duss,—a member of the society and the senior trustee thereof,—were acting together in a conspiracy to wreck and dismember the society, and appropriate to themselves the entire assets of the society. The bill further alleges that all the purposes for which the society was founded and its established practices had been abandoned, and that by common consent the society had ceased to exist as an association, and had been dissolved, and that "the assets of such dissolved association have reverted to the donors thereof, among whom were the ancestors and intestates" of the plaintiffs. The bill prays for the appointment of a receiver, and for the

division and distribution of the assets of the society among the persons legally entitled thereto, including the plaintiffs. All the defendants have answered the bill. In their answers they all deny the above-recited charges and allegations, and all the averments in the bill upon which the plaintiffs' supposed right to relief rests; and they also deny that the plaintiffs have any interest whatever in the property of the Harmony Society, or any right to intermeddle with its affairs. After the cause was at issue, the parties thereto entered into and filed a written agreement, whereby they stipulated—

"To request the court to appoint W. W. Thomson, Esq., as examiner and master in this case; that to said Thomson shall be given, as examiner and master, the authority to hear and take all the testimony, and to find all the issues of law and fact, and to report the testimony and such findings to the court: * * * the parties reserving the right to be heard before this court on exceptions to such finding, and reserving the right of each to take appeals from the decree, decision, and judgment of this court therein, to the proper appellate court, with the same force and effect as though this cause had been decided by the court below without the intervention of a master."

And thereupon, at the request of all the parties to the suit, the court appointed Mr. Thomson examiner and master in the cause, with the authority specified in the said agreement. In conformity with the agreement of the parties, and pursuant to the order appointing him, the master took a large amount of testimony, and made findings which are embodied in a written report to the court. The master filed with his report the testimony and exceptions taken by the plaintiffs to his findings. The cause has been heard upon the pleadings and evidence, the master's report, and the exceptions thereto.

The report of the master is altogether adverse to the plaintiffs. He finds that the charges of conspiracy and misconduct, and the allegations of abandonment of the purposes and established practices of the Harmony Society and of the dissolution of the society, contained in the bill, are not sustained by the evidence, and that they are not true. Upon every material question of fact the finding of the master is distinctly in favor of the defendants, and he recommends the dismissal of the bill. The master's report covers the entire case, and evinces the most careful consideration of every question here raised. Nevertheless, the court has felt it to be its duty to make an independent investigation of the facts and merits of the case, and therefore we have attentively read and considered the whole of the evidence. Avoiding, as needless, a particular discussion of the numerous exceptions to the master's report, we will briefly state our general views and conclusions.

The constitution of the Harmony Society is embodied, and the general purposes of the association are set forth, in a series of written agreements, executed in the years 1805, 1821, 1827, 1836, 1847, and 1890. These agreements were signed at their respective dates by all the then members of the society. By the agreement of 1805 the doctrine of community of property became, and by the subsequent agreements, continued to be, a fundamental principle of the society. Its acceptance is an essential condition of membership. By the constitution of the society individual ownership of property is renounced in favor of the community or society. The members have all things in

common, and each is entitled to receive from the society necessary maintenance, support, and education, and in return each is bound to render to the society labor and obedience. The agreement of 1827 contained a provision that, if any member withdrew from the society, there should be refunded to him the value, without interest, of all property he had brought into the community. The agreement of 1836, however, rescinded that provision wholly, and stipulated that' if any individual shall withdraw from the society, or depart this life, neither he, in the one case, nor his representatives, in the other, shall be entitled to demand an account of his contributions, whether in lands, goods, money, or labor, or to claim anything from the society as matter of right, but that it shall be left altogether to the discretion of the superintendent to decide whether any, and, if any, what, allowance shall be made to such member, or his representatives, as a donation.

In view of the decision of the supreme court of Pennsylvania in Schriber v. Rapp, 5 Watts, 351, and the decisions of the supreme court of the United States in Goesele v. Bimeler, 14 How. 589, and Baker v. Nachtrieb, 19 How. 126, it is clear that the above-recited articles of agreement are valid contracts, and that thereunder, upon the death of a member of the society in fellowship, no claim, enforceable against the society or its property, passes to his heirs or personal representatives, and that since 1836 no member voluntarily withdrawing from the society could acquire any such claim. Now, not one of the plaintiffs was ever a member of the Harmony Society. Furthermore, it does not appear that any of the persons through whom the plaintiffs claim contributed any money or property to the society. The master has found that no such contribution was ever made by any of those persons. The correctness of that finding has not been impeached. All the members through whom the plaintiffs claim, who left the society, withdrew in or before the year 1827. Presumably they retired upon terms satisfactory to themselves. If, however, those persons, so withdrawing, had any legal demands against the society, those demands have been barred by lapse of time. Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610. The other persons through whom the plaintiffs claimed remained with the society and died in fellowship. They thus received and enjoyed all the benefits secured to them by the recited articles of agreement, and therefore no rights, enforceable against the society, passed from them to their heirs or personal representatives.

The soundness of the view that the deceased ancestors and collateral relatives of the plaintiffs could transmit to them no rights, enforceable against the Harmony Society as a living organization, is impliedly conceded by the bill, for it alleges that the society had come to an end. The bill proceeds upon the theory that a dissolution of the society had been brought about. Upon this assumption, and under the allegation "that recently said Harmony Society had become dissolved as aforesaid," the bill prays that the court take charge of the assets of the society, and distribute the same among the parties legally and equitably entitled thereto. But the hypothesis of dissolution is not well founded. The proofs show that the society is in full life.

There has been no dissolution of the society, either by the common consent of the members or by their acts. The membership, indeed, has become greatly reduced, but the rights of the society as now constituted are as sacred in the eye of the law as they were when the membership was twenty-fold greater. The society as an organization exists, in law and in fact. Under the evidence, the findings of the master upon this branch of the case undoubtedly are right. Hence the very foundation of the bill fails. The plaintiffs do not show that they are entitled to any equitable relief whatever. It is not necessary, nor would it be proper, for the court to express any opinion as to what would be the legal status and the ultimate disposition of the property of the Harmony Society, were its existence terminated by the death of all its members, or were a dissolution of the society otherwise effected. No such questions are before us. We are not dealing with the assets of a defunct or dissolved association.

In respect to the alleged conspiracy to wreck and dismember the Harmony Society, we feel called upon to say that we fully agree with the conclusion of the master. The acts here principally complained of were, we think, designed, not to destroy the society, but to save it from the consequences of business mistakes made by none of the present officers or members of the society, and for which none of them are at all responsible. The measures resorted to in the emergency which was upon the society were successful in extricating it from great financial peril. Those measures were adopted and carried out under the advice of eminent counsel, whose rectitude of purpose the court cannot doubt. And now, before closing, we deem it to be our duty to declare that, after the most careful scrutiny of the evidence, it is our judgment that the charges of immorality made against John S. Duss, the senior trustee, in the twenty-fourth paragraph of the bill, are not sustained by the evidence, but are disproved.

The general rule in equity, that costs follow the decree, we think, should be applied here, under the circumstances. Swentzel v. Bank, 147 Pa. St. 140, 154, 23 Atl. 405, 415. The bill alleges conspiracy, fraud, and immorality, and these grave charges have not been withdrawn. Having successfully vindicated themselves from these charges, the defendants are justly entitled to full costs.

### Decree.

This cause came on to be heard at this term of the court, upon the pleadings and evidence, and the report of the master and exceptions thereto, and was argued by counsel. And now, this 13th day of February, 1899, upon consideration, it is ordered, adjudged, and decreed that the plaintiffs' bill be, and the same is hereby, dismissed; and it is further ordered, adjudged, and decreed that the plaintiffs pay the costs, including the master's fee, to be fixed sec. reg., and which, together with his compensation as examiner, shall be paid to the master in the first instance by the defendants.