## Brotherhood of Railroad Trainmen, et al. v. Williams, et al.

(Decided June 19, 1925. Rehearing Denied, with Modifications, December 15, 1925.)

### Appeal from Greenup Circuit Court.

1. Corporations—Plaintiffs Cannot Avail Themselves of Ground that Defendant Corporation had Not Complied with Statute.—In suit against foreign corporation, plaintiffs cannot avail themselves of ground that defendant had not complied with Ky. Stats., section 571, and hence was without capacity to sue or defend.

2. Associations—Corporations—Generally Constitution and By-Laws are Controlling.—General constitution and by-laws of voluntary association, whether incorporated or unincorporated, are controlling in all internal matters of the society.

3. Associations—Generally Courts will Not Interfere, if Affairs of Lodge are Conducted in Accordance to its Laws and Rules.—Generally courts will decline to interfere, so long as affairs of lodge are conducted in accordance to its laws and rules, leaving all internal questions to constitution and rules adopted by members as their charter rights.

4. Associations—Generally Voluntary Associations May Determine Property Rights and Interests of Members of Subordinate Lodge.—Generally voluntary associations may, by constitution and other general rules, determine finally property rights and interests of members, or of subordinate lodge, in and to funds and property accumulated by local lodge, and all members of lodge, as well as the local itsef, are bound thereby.

5. Associations—Supreme Body May Enforce Law Requiring Subordinate Lodge to Surrender Property and Funds.—The supreme body of a voluntary association may enforce its laws, properly enacted, requiring a subordinate lodge, on voluntary dissolution, to surrender its property and funds to the Grand Lodge.

6. Associations—Supreme Body Cannot Require Subordinate Lodge to Surrender Property and Funds, where Revocation of Latter's Charter was Without Cause.—Where the supreme body of a voluntary association has, pursuant to laws of order, revoked subordinate lodge's charter, especially where revocation was without sufficient cause, and right of supreme body to recall charter is questioned, it has no power to require subordinate lodge to surrender its property and funds to it, because such rule would be

contrary to public policy, as permitting supreme body to hear and determine its own case, acting as its own court.

7. Associations—"Effects" Held to Include Money, Bonds, and Property of Defunct Lodge at Time of Dissolution.—Under charter of voluntary association, providing that president of defunct lodge should deliver to grand lodge, within 30 days of dissolution, "charter, seal, rituals, unwritten work, and all other supplies furnished by the Grand Lodge, and all effects of lodge at time of dissolution," "all other supplies" come within rule of ejusdem generis, and "effects" include money, bonds, and other property of lodge at time of dissolution.

8. Associations—Plaintiffs, having Adopted Constitution Submitting Rights Within Order to Tribunals Thereof, Forever Bound Thereby as Members, Collectively and Individually.—Plaintiffs, having filed application to become members of voluntary association and became members and adopted constitution submitting rights within order to laws and tribunals thereof, are forever bound thereby to extent of their interest as members, individually and collectively, in funds of lodge.

S. S. WILLIS for appellants.

JOHN S. FULLERTON and E. E. FULLERTON for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Appellant, Brotherhood of Railroad Trainmen, is a national organization, operating through local lodges, one of which, Chesapeake Lodge No. 454, was located at Russell, a railroad center, in Greenup county. During the year 1920, this local, without authority from the grand lodge, and in defiance, as it is averred, of the constitution and general rules of the order, participated in an unlawful strike for more than ten days. For this violation of the general laws of the order Chesapeake Lodge No. 454 was outlawed, and its charter revoked by the president of the grand lodge in the way and manner provided by the constitution and general rules of the national organization. At the time of the revocation of its charter Chesapeake Lodge No. 54 owed no debts and had on deposit in the bank $416.39, and owned and had at the same bank for safekeeping Liberty Bonds of the par value of $800.00, and United States War Savings stamps of the par value of $834.00; in addition to this, the local lodge owned some furniture including a rug, desks, chairs and other such articles located in a lodge room at Russell. After the revocation of the charter of the

local, the grand lodge demanded that the money, bonds, war savings stamps and other property of the local be surrendered and turned over to the grand lodge, but this was refused. While this controversy was pending this suit was instituted in the Greenup circuit court by appellants, Williams, McCormick, Auxier, Osborne and Vaughn, members of Chesapeake Lodge No. 454, at the time of the revocation of its charter, on behalf of themselves as former members of the lodge and as citizens and residents of Russell, Kentucky, and more than (400) four hundred others similarly situated, against the Brotherhood of Railroad Trainmen, and the First National Bank of Russell, to determine the ownership of and right to the money, bonds, war savings stamps and other property to which we have referred, all of which was mentioned and described in the petition. In the petition it was averred "that on said date May 28, 1920, the said Brotherhood of Railroad Trainmen revoked the charter granted to the said subordinate lodge by the grand lodge of the Brotherhood of Railroad Trainmen, by which the said local lodge had its existence, and exercised its functions, and that upon said charter being revoked said subordinate lodge became a 'defunct lodge' under the constitution of the grand lodge, and its constitution;  . . . that said money and bonds belonged to the members of the 'defunct lodge' *pro rata,* and should, after its debts and claims against said 'defunct lodge' are paid, be distributed *pro rata* to the members of said lodge at the time said charter was revoked  . . . ; plaintiffs say that the defendant, the Brotherhood of Railroad Trainmen, is unlawfully making claim to said money, bonds, war savings stamps and also to the furniture, druggets, etc., heretofore itemized and set out; that by reason of the claim made by the said Brotherhood of Railroad Trainmen, the defendant bank refused to deliver to the plaintiff the money, bonds and war savings stamps in question until the question was adjudicated and an order of court entered directing it to pay the money and deliver the bonds and war savings stamps to the party or parties to whom they belonged, according to the judgment of the court."

The defendant, now appellant, Brotherhood of Railroad Trainmen, filed answer and denied that the plaintiffs, now appellees, Williams, et al., and any or either of them were entitled to the money, bonds, war savings

stamps and personal property, described in the petition, and pleaded that Chesapeake Lodge No. 454 was a subordinate lodge under the jurisdiction of the appellant, grand lodge, an organization created and existing under and by virtue of the ''constitution and general rules'' and the laws of the grand lodge of the defendant. The defendant states that said constitution, rules and by-laws are voluminous and constitute a complete code for the government of said subordinate lodge.''

The answer then sets out and relies upon section No. 43 of the constitution of the national organization, which says:

> ''Sec. 43. A lodge whose charter has been voluntarily surrendered or reclaimed by the president of the grand lodge shall be known as a defunct lodge. The president of a defunct lodge shall deliver to the grand lodge, within thirty days after the dissolution of the lodge, the charter, seal, rituals, unwritten work, and all other supplies furnished by the grand lodge, and all effects of the lodge at the time of dissolution. Any president, treasurer, or secretary failing to comply with the provisions of this section shall forever be excluded from membership in the brotherhood.
>
> ''Whenever the membership of a subordinate lodge falls below five members the charter of said lodge shall be revoked.''

Reliance is had also upon certain paragraphs of section 132 of the constitution of subordinate lodges, which in part reads:

> ''All money collected by the treasurer or collector for any purpose whatsoever shall be and remain the property of the subordinate lodge until properly expended or remitted as provided by the constitution and general rules. . . . The funds and property of this lodge, having been raised for the relief of sick and distressed brothers and other charitable purposes in the brotherhood, are trust funds for the contingent benefit of its members and shall not be divided, loaned or donated in any manner among or to its members individually, or to others, nor between the lodges, nor to any other that may branch from it, without the assent of a majority of the mem-

bers in good standing upon its rolls. Whenever a brother ceases to be a member of this lodge, his rights, title and interest in and to the property of this lodge, or any part thereof, thereby becomes extinct.''

Other sections of the constitution and general rules are set forth in the answer and relied upon by appellant, grand lodge, as controlling the rights of appellees, Williams, et al., and a copy of the constitution and general rules of the grand lodge and of the constitution of the local lodge are filed and made a part of the answer.

By reply the averments of the answer and counter-claim were put in issue. Affirmatively pleading, appellees averred that at the time of the revocation of the charter of the local lodge all dues and assessments to the grand lodge had been duly paid; that the money, bonds and property ''to which they make claim belonged to them collectively and individually, and that the said grand lodge has no legal, just or equitable claim thereto or any part thereof; that any claim they make or might make is fraudulent and without consideration; that said grand lodge contributed nothing towards the building up of said funds, purchase of bonds and war savings stamps, or the purchase of the property in question, but the same grew out of dues collected from members of the said local lodge, and under the constitution and by-laws mentioned was funds and property of said local lodge,'' all of which is based upon section 132 of the constitution, found on page 121 of the book containing the constitution and general rules, etc., filed as part of the answer of appellant. Appellants also pleaded that the Brotherhood of Railroad Trainmen, a corporation organized and existing under and by virtue of the laws of the state of Ohio, was carrying on and conducting and transacting business in the state of Kentucky without having first complied with the provisions of section 571, Kentucky Statutes, requiring the designation of an agent or agents upon whom process may be served in the state of Kentucky, and designating the office or offices at which its agent or agents may be found; that by reason of its failure so to comply with the provisions of that section of the statutes it is without capacity to sue or defend. As the Brotherhood of Railroad Trainmen is not plaintiff but merely defendant, this ground, a very questionable one, is not

available to the appellees, and this phase of the case will not be further noticed. Section 571, Kentucky Statutes; Clark v. Cooper, 197 Ky. 530, 247 S. W. 929; Warren Oil & Gas Co. v. Gardner, 184 Ky. 411, 212 S. W. 456; Ewell v. Board, etc., 187 Ky. 434; Artman Lumber Co. v. Bogard, 191 Ky. 392; Great Western Petroleum Co. v. Samson, 192 Ky. 818; Reichert v. Ellis Ferry Co., 184 Ky. 250, 211 S. W. 403.

The parties stipulated the facts and, the case being submitted to the court, judgment was entered dismissing the answer and counterclaim of the defendant, Brotherhood of Railroad Trainmen, and awarding the funds and property in controversy to appellees, Williams, et al., hence this appeal by the Brotherhood.

It is the contention of appellants, Brotherhood, that the constitution and general rules of a fraternal benefit association constitute a contract among its members and settle the rights created among them, and that courts will not interfere so long as the procedure erected by such constitution is regarded in the transaction of its business; that an agreement that the funds of the organization held for the mutual benefit of all members may be used in accordance with a fixed plan, and that the rights of members therein shall cease upon their withdrawal or expulsion from the order, is valid and binding, from which principles it is deduced by the brotherhood that the provisions in section 43 of the constitution of the grand lodge to the effect that the property, goods and effects of a local lodge whose charter has been revoked shall pass to the grand lodge is not against the law of the land and may be enforced because based upon an agreement or contract between the members of the organization, adopted, accepted and ratified at the time they and each of them became members of the society, and before they or either of them had contributed anything to the funds which later are brought in contest. The appellees, Williams, etc., and their associates deny the soundness of the foregoing proposition and assert that appellant, grand lodge, is attempting to exercise arbitrary power and to take the property and money of the local lodge for nothing, although it was paid in by members of the local lodge for definite purposes, none of which appertains to the grand order; that the revocation of the charter of the subordinate body cannot have the effect of confiscating the property owned absolutely by the local body, and the

rules and laws of the supreme lodge or council of the society, providing that when a local organization is suspended, its property shall be forfeited and vest in the secretary or some other officer of the supreme body, are void, because they seek to confiscate without judicial process, property owned and held absolutely by the local organization.

The correct determination of this appeal involves a proper construction of the constitution and general rules of the brotherhood, and especially of section 43 of the constitution of the grand lodge, copied above, and section 132 of the constitution of the subordinate lodge to which we have referred, when read in the light of the law of the land.

Let us examine now the controlling authorities. There is a general rule that the constitution and by-laws of a voluntary association, whether incorporated or unincorporated, are controlling, in all internal matters of the society. 19 L. R. A. 1190, 52 L. R. A. 861, 43 L. R. A. 390, 3 L. R. A. 430.

With respect to the right and power of an organization, such as the brotherhood, to adopt a constitution and rules for its government and the government of its members, prescribing their rights and duties and fixing their property rights in and to funds and effects of the lodge, how such rights may be found and determined, it may be said to be the general rule that courts will decline to interfere so long as the affairs of the lodge are conducted in accordance to its laws and rules, leaving all internal questions to be controlled by its constitution and rules adopted by the members as their charter rights, and that such societies may, by the adoption of a constitution or other general rules, determine, finally, the property rights and interest of a member or of a subordinate lodge in and to funds and property accumulated by a local lodge; and all members of the lodge as well as the local itself are bound thereby, the reason being that the members have agreed and obligated themselves to recognize and support the laws of the order and to abide by the results, if excluded from membership, and on surrender of the charter of the local to pass the property of the local in accordance with the general law of the order. Kentucky Lodge v. White, 6 Ky. L. R. 418; Wallace v. Grand Lodge (Ky.), 107 S. W. 724; Brewster v. Miller, 101 Ky. 368; Lawson v. Hewell (Calf.), 49 L. R. A. 400; Oliver v. Hopkins, 144 Mass. 175; Schwartz

v. Duss, 93 Fed. 528 (affirmed 187 U. S. 8), 4 L. Ed. 53; Spillman v. Supreme Council, 157 Mass. 128, 31 N. E. 776; Bachman v. Hofman, 104 Ill. Appeal 159; Neto v. Conselho Amor, etc., 19 Calif. App. 2341, 122 Pac. 973.

In Odd Fellows v. White, abstract opinion, 5 Ky. Law Rep. 418, we recognized the rule that courts will not interfere to control the administration of the laws of a merely voluntary association, or to enforce the rights springing therefrom, but such organizations must be left to enforce their rules and regulations by such means as they may adopt for their government, and no relief will be granted until the remedies within the body have been exhausted. See also Gass v. Wilhoite, 2 Dana 170, 26 Amer. Dec. 446.

The courts are not in accord and there is no unanimity of opinion on the question of whether a superior lodge may, by its constitution, rules and by-laws, require a subordinate lodge of the order, which acknowledges its jurisdiction, to turn over its property and funds to the superior body upon the dissolution of the subordinate; and this is true even where each member of the subordinate has at the time of attaching himself to the order, signed a written application and contract by which he agreed that he would in all events be bound by all the laws of the order, including the constitution, rules and by-laws, with the knowledge that in such laws there is a provision that the property and funds of the subordinate shall pass to and become the property of the superior body in the event of a dissolution, either voluntary or otherwise, of the subordinate. In 7 C. J. 1114, it is said:

"The property rights of the respective bodies in the case of a withdrawal by a subordinate lodge ordinarily depend on the laws of the society and of the charter and constitution of the local lodge." See 19 R. C. L. 1222; 25 R. C. L. 67; 15 L. R. A. (N. S.) 338.

This text is based upon Koener v. Grand Lodge K. of P., 146 Ind. 639; Masonic Lodge v. Weaver, 28 Ohio Circuit Court, 598; In Re Sheffield, 67 J. P. 613.

The same text (7 C. J.), on page 1113, says:

"On voluntary dissolution of a local body its assets generally become the property of the central organization."

In support of this text are cited the cases of Die Gross Lodge O. H. S. S. v. Wolfer, 42 Colorado 393;

Gross Lodge D. O. H. S. v. Brausch, 256 Ill. 185; Koerner Lodge No. 6 K. P. v. Grand Lodge K. P., 146 Ind. 639; Schubert Lodge No. 118 K. P. v. Schubert Kranken Utersturzen Verein, 56 N. J. Ed. 78; Grand Council P. W. A. v. McPherson, 8 Dom. L. R. 672.

Again it is said in the same text, page 1112:

> "The right and title to particular funds and the power of control thereover, as between the central organization and the subordinate bodies by whom the funds were raised, depend on the laws of the society."

In support of this statement are cited 161 Mass.; 23 L. R. A. 486; 101 Mich. 119. As holding to the contrary is cited the case of Junior Order v. State Council, 66 N. J. 429.

Bacon in his work on Life and Accident Insurance, page 147, book 1, 4th edition, says:

> "That the property owned by a subordinate lodge of a fraternal insurance order is subject to the constitution and laws of such order, and the right of the members of a subordinate lodge is simply the right to use the property, and when the lodge is dissolved the right ceases; but the revocation of the charter of a subordinate body does not vest its property in the supreme body, nor give a portion of the members, to whom the charter was reissued, the right of possession. It has also been held that the assets of a subordinate lodge are not only held in trust but the grand lodge can maintain an action for the funds appropriated among the members when dissolved."

After reviewing the cases cited in support of the text from which we have copied and many others, we have reached the conclusion that the prevailing rule upon the subject allows the supreme body to enforce its laws, properly enacted, requiring the subordinate lodge, upon voluntary dissolution, to surrender its property and funds to the grand lodge; but where the supreme body has, pursuant to the laws of the order, revoked the charter of the subordinate, especially where such revocation is without sufficient cause, and the right of the supreme body to recall the charter is questioned, the supreme body has no power to require the subordinate lodge to surrender its property and funds to it, because, as is

shown by the cases to which we have referred and many others, such rule would be contrary to public policy in that the supreme body would be permitted to hear and determine its own case, acting as its own court. State Council v. Emery, 15 L. R. A. (N. S.) 336.

In the case before us the charter was revoked by the grand lodge, but this is the sole basis of relief upon which appellees in bringing this action relied. Averring that the charter has been revoked and that the local lodge had become and was defunct, the five appellees, former members of the defunct organization, but not now claiming to be members of the order, instituted this action, relying upon the facts that the local was defunct and making no question as to the right of the supreme body to recall the charter of the local. In such situation the question is whether the individual member of the local can maintain an action for and on behalf of the local without naming it as a party; and if so, may such parties, after averring and relying upon the revocation of the charter by the grand lodge as grounds for the relief sought, and admitting that they are not members of the local, assert that the charter was improperly revoked, or even complain that the charter was not properly and regularly revoked, or revoked at all, and thus invoke the rule prohibiting grand lodges taking over the property and funds of locals in cases where the charter has been revoked? And if so, are not the defunct local and its members in the same situation under the facts of this case as if that body had voluntarily dissolved and surrendered its charter?

Appellant, Brotherhood of Railroad Trainmen, insists that section 43 of the constitution covers and completely determines the question we have before us, it being argued that as the appellees averred in their petition that Chesapeake Lodge No. 454 was ''defunct'' and its charter had been revoked by the grand lodge before the commencement of this action, the president of the local lodge was required to deliver its property and money to the grand lodge within thirty (30) days after the dissolution of the local; that the provisions of section 43 cover and include all property of the local and not merely the charter, seal, rituals, unwritten work and other supplies furnished by the grand lodge. For appellees it is insisted that section 43 includes only such property of the lodge as the charter, seal, rituals and unwritten work furnished by the grand lodge to the local,

and that the concluding clause of that section providing "and all *effects* of the lodge at the time of the dissolution," refers, under the rule of *ejusdem generis,* to goods and property like and similar to the charter, seal, rituals and unwritten work, and to nothing else. Appellees also assert that section 132 of the constitution of the local specifically vests funds and property, such as now in contest, in the local lodge for works of benevolence and for other charitable work in the brotherhood; that they are "trust funds" for the contingent benefit of its members and shall not be given, loaned or divided in any manner among or to its members individually, or to others or between the lodges, nor to any other that may branch from it, without the assent of the majority of the members in good standing upon its rolls."

We are not greatly impressed with the argument of appellees that the rule of *"ejusdem generis"* should be applied to the concluding clause of section 43, copied above, for we are persuaded that it was the duty of the president of the "defunct lodge" on disolution of the local to deliver the charter, seals, ritual and unwritten work and "all other supplies furnished by the grand lodge" to the grand lodge, which last quoted expression, "all other supplies furnished by the grand lodge," comes within the rule of *"ejusdem generis"* and exhausts it; but the next clause, set off by commas, reading "and all *effects* of the lodge at the time of dissolution" is not controlled by that rule. All the property of the local lodge which was furnished by the grand lodge was specifically mentioned, but to show that everything of that nature was included in the preceding clause of the sentence, there is added "and all other supplies furnished by the grand lodge," which, of course, refers to and includes every kind of property and supplies received by the local from the grand lodge, and if it had been the purpose of the constitution to cover and include only such things, the sentence would have been complete, but after adding a general sweeping clause making definite and certain that nothing of that kind is left out, another clause was added relating to other things and purposes and intended to include all other goods and property of the local of all kinds whatsoever, all of which was accomplished by appending the words "and all effects of the lodge at the time of dissolution."

"In construction of laws, wills, and other instruments, general words following an enumeration

of specific things are generally restricted to things of the same kind (*ejusdem generis*) as those specially enumerated." Bouvier; Black v. Commonwealth, 171 Ky. 280.

Appellant insists that the rule of *ejusdem generis* is one of construction and applies only when the meaning of the clause is uncertain, and it has no application to the facts of this case where the language is too plain to require construction; that the word "effects" is not associated with principal words of less comprehensive meaning and significance, and appears in a distinct, general, all-inclusive separate sentence, reading "and all effects of the lodge at the time of dissolution," and is not governed by the rule.

The one question to consider is, does the word "effects" as employed in section 43 of the constitution, include such property as money, bonds, war savings stamps and furniture? Bouvier says: "The word *effects* means property or worldly substance, and as thus used it denotes property in a more extensive sense than goods. Indeed, the word may be used to embrace every kind of property, real and personal, including things in action, ships at sea, and bonds, shares of capital stock."

In the case of Dickson v. Dickson, 180 Ky. 426, we defined the word "effects" as referring to and including all kinds of personal property. In 19 C. J. 1017, in speaking of the word "effects," it is said:

"The word is a very general term and is used to denote whatever man has that can effect, produce, or bring forth money by sale. In its broadest sense it is defined to be property or worldly substance; whatever can be termed of value. As thus used, it denotes property in a more extensive sense than goods. Indeed, the word may be used to embrace every kind of property, real and personal, including things in action, land, tenements, etc., and everything which is subject to the laws of property and ownership, whether real or personal. Primarily, however, it includes only personal estate, goods, movables and chattel property, all kinds of personal estate, and not real estate; but this is not its correct meaning where a contrary intention appears from the terms of the instrument in which the word occurs. It is often confined to property *ejusdem generis* to articles specified." See also Phelps v. Commonwealth, 209 Ky. 318.

We conclude, therefore, that the word "effects" is broad enough to and does include, as employed in the constitutional provision, section 43, money, bonds, war savings stamps, rugs and furniture.

We are constrained to hold that when appellees, together with those for whom they sue, filed applications to become members of the brotherhood, and became members, they entered into a compact, and adopted and accepted the constitution and general rules of the order made a part of the answer in this case, thus submitting all their rights within the order to the laws and tribunals thereof, and are forever bound thereby to the extent of their interest as members, individually and collectively, in any funds or property of the lodge, and must submit to the regular and lawful adjudication of the supreme lodge affecting their property rights in and to the funds and effects of the lodge and membership in and of the local organization, unless this rule is applicable only to such subordinate lodges which are voluntarily dissolved, and does not apply in any case to those which are dissolved by revocation of the charter by the grand lodge. Inasmuch as appellees have for themselves and others pleaded the revocation of the charter of Chesapeake Lodge No. 454, as the fundamental basis of their cause and as if approving the revocation, and in consequence that the lodge had become and was "defunct" before the commencement of this action, the laws of the order with respect to the property of "defunct" local lodges must be held and considered to have taken effect and to be and to have been in operation with respect to the money, property and effects in contest, and that the adjudication of the regularly constituted tribunals within and of the order according to its laws, are final and binding not only upon the members and the local lodges but upon the courts as well.

It is indeed unfortunate that the peaceful ship of this great and useful brotherhood, carrying the motto "Benevolence—Sobriety—Industry," should have temporarily floundered on the rocks of discord at Russell, and that it was found necessary, for the instant, to send out an S. O. S. to the courts. But this frequently happens even to churches, religious organizations and other societies.

We conclude, therefore, that the trial court erred to the prejudice of appellant, brotherhood, in adjudging the money, bonds, war savings stamps and other effects

of Chesapeake Lodge No. 454 to belong to appellees, Williams, et al., for the use and benefit of themselves and other members of the defunct local, and in dismissing appellant brotherhood's counterclaim. On the contrary, it should have dismissed the petition, sustained the counterclaim and awarded the property to the grand lodge in accordance with the provisions of section 43 of the constitution of the grand lodge as herein interpreted and construed.

For these errors the judgment is reversed for proceedings consistent herewith.