W. B. SANDERS, Plaintiff,

v.

INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS et al., Defendants.

PEOPLES FIRST NATIONAL BANK & TRUST COMPANY OF PADUCAH, Plaintiff,

v.

LOCAL UNION NO. 595 OF THE INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS et al., Defendants.

John H. LYONS, etc., et al., Plaintiffs,

v.

Wilford B. SANDERS et al., Defendants.

Civ. A. Nos. 765–767.

United States District Court, W. D. Kentucky, Paducah Division.

March 18, 1955.

See also 120 F.Supp. 390; 120 F. Supp. 392.

Mahlon R. Shelbourne, Francis T. Goheen, Joseph S. Freeland, Paducah, Ky., for Internationl Ass'n of Bridge, Structural and Ornamental Iron Workers and others.

Joseph J. Grace, Roy Vance, Andrew J. Palmer, Paducah, Ky., for Wilford B. Sanders and others.

SWINFORD, District Judge.

The three above titled and numbered cases were consolidated for trial and are now submitted on briefs for a final determination. The issues involved arise out of a controversy between the International Association of Bridge, Structural and Ornamental Iron Workers and its local union at Paducah, Kentucky. While these cases were tried together and submitted as a consolidated cause, I feel that they should be considered separately and since the case of John H. Lyons et al. v. Wilford B. Sanders et al., No. 767, apparently raises all questions involved in all of the cases, this opinion will address itself to that case, but will be considered as the conclusions of the court in each of the cases. I make this observation in order to avoid

referring to different cases by title or number throughout this opinion.

The International Association of Bridge, Structural and Ornamental Iron Workers is an international union with a membership of more than one hundred thousand iron workers. It was organized in 1896 and has something like three hundred separate local unions. It is affiliated with the American Federation of Labor and will be referred to as International.

Local Union No. 595 is an affiliate of International with headquarters at Paducah, Kentucky. It has a membership of more than one thousand members who are also members of International. Both International and Local Union No. 595 are voluntary unincorporated associations.

John H. Lyons is general president of International; Charles C. Hobbs is financial secretary-treasurer, business agent and business manager of Local Union No. 595; and Juel Drake is president of Local Union No. 595.

The defendants, Wilford B. Sanders, Percy B. Cloud, Edward W. Osborn, Homer Wyatt, Charles Culp, Charles E. Hutcherson, Cecil Biggs and Glyn McElya were members and officers of Local Union No. 595.

The Iron Workers Association, Incorporated, was chartered by the State of Kentucky on the 17th day of October, 1953, for specific purposes in connection with the promotion of the programs and rights of iron workers.

The defendant banks are depositories of certain funds in this litigation, the control of which, as between the parties, is at issue.

In 1953 a controversy arose between International and Local Union No. 595, growing out of disputes over work rights of the members of the union on construction work at Joppa, Illinois, identified as the Joppa Steam Electric Station Project.

The International, its affiliated local unions and the entire membership were, at all times referred to in the record,

governed by a constitution, identified in the record as Plaintiffs' Exhibit A. All actions of International in dealing with the defendant members and Local Union No. 595 were authorized by the terms of the Constitution.

On September 26, 1953, the defendant members were charged with violations of Article XVII, Section 10, and Article XVIII, Section 28, of the Constitution. These charges were in writing and were specifically stated to be based on the fact that (1) the defendant members were causing and continuing a strike at the Joppa project contrary to a no-strike agreement between the contractor, the International and the local; (2) issuing illegal orders to picket, strike and barricade the project in defiance of the orders of International; (3) refusing to comply with and acting contrary to the orders of the general president and general secretary of International for cessation of the illegal strike. While there were other specific charges against certain of the individual defendants that did not apply to all of them, the above enumerated charges were the principal ones on which the executive officers of the International acted and a consideration of them is sufficient to determine the issues involved in this lawsuit.

Between October 24 and October 31, 1953, the defendant members were given separate trials before the General Executive Board. The parties were present, evidence was introduced and the trials were conducted in accordance with the rules and practices of the International. On December 9, 1953, the General Executive Board handed down written opinions on the trials of the defendant members. The Board found the defendant, Wilford B. Sanders, guilty on all charges and stated its conclusions in the following language:

"This Board having found from the evidence presented at the trial of the accused and from the accused's admissions, that the accused is Guilty of Charges Nos. 1, 2, 3, 4 and 5, which involve specific violations of the Constitution of the In-

ternational, by virtue of which violations This Board under Sections 10 and 11 of Article XVII is empowered to impose such sentence as it may deem appropriate and just, including expulsion of the accused, because of the serious nature of the charges and the accused's flagrant violation of the aforementioned provisions of the Internatioenl Constitution, Hereby Adjudges and Decrees that the accused Wilford B. Sanders, Membership No. 139263 be and he hereby is Expelled as a member of the International Association of Bridge, Structural and Ornamental Iron Workers and from any of its affiliated Local Unions, and he be and is forever Debarred from becoming a member of the International Association of Bridge Structural and Ornamental Iron Workers or any of its affiliated Local Unions."

The defendant, Percy B. Cloud, was found guilty of all the above enumerated charges and debarred for a period of ten years from holding any office, acting in any representative capacity and attending any meetings of the union.

The defendants, Edward W. Osburn, Homer Wyatt, Charles Culp, Charles E. Hutcherson, and Cecil Biggs, were found guilty of all charges and were debarred from offices and activities, such as those applied to their co-defendant, Percy B. Cloud, for a period of seven years.

On the same date the General Executive Board placed the local under direct International supervision. Juel Drake was appointed president and Charles Hobbs was appointed financial secretary-treasurer, business agent and business manager. By the appointment they were authorized to conduct the affairs of the local and to control all of its properties.

All of the actions, rulings and judgments of the General Executive Board were later ratified and affirmed by the General Executive Council. By the terms of the Constitution, appeals may be taken from the decisions of the General Executive Council to the Regular Convention. The Regular Convention has not convened since the decision of the General Executive Council and will not convene until 1956. No appeal will be considered by the Regular Convention unless it is shown that there has been compliance with the decisions of the General Executive Council. This is a jurisdictional fact and a condition precedent to any hearing of such an appeal by the Regular Convention.

The defendant members declined to recognize the rulings of the International and refused to vacate their offices in the local. They continued in possession and control of the local's property, including books and records, real estate, government bonds, office furniture, and other personal property and moneys. They continued to operate and conduct the affairs of Local No. 595 by collecting dues and attending to all matters pertaining to its operating functions.

On December 9, 1953, $30,000 of the funds of Local No. 595 were transferred by a check to the Ironworkers Association, Inc., an organization which was under the domination and control of the defendant members. The authority for this transfer of funds to the Ironworkers Association, Inc. is reflected by the minutes of the meetings of Local No. 595 of October 17 and October 22, 1953.

The minutes of the meeting of October 17, 1953, recite that:

"A motion was made, duly seconded, and unanimously carried to donate the sum of $30,000 to the Iron Workers Incorporated. Approximately 500 members were present."

The minutes of the meeting of October 22, 1953, recite:

"Unfinished Business:

"Motion made that the $30,000 voted at the meeting October 17, 1953 to be donated to the Ironworkers Association, Inc. be donated to the said corporation. Motion was made by Loren Penninger and seconded by R. E. Masters. Upon a

vote of the membership the motion was unanimously passed.

"A motion was made that the Officers transfer $30,000 of the Ironworkers Local Union No. 595 to the Ironworkers Association, Inc. Motion unanimously carried. This being the second call of the foregoing business."

This action, No. 767, and the causes with which it is consolidated, seek to have the court adjudge the rights of all the parties and to direct what disposition is to be made of funds now in the defendant banks. The record presents two questions which are determinative of the whole issues involved.

In the first place, all of the parties were governed by the Constitution of the union on which both the International and the local, as voluntary associations, stood and to the provisions of which each of the members had subscribed and accepted as a part of the benefits, responsibilities and obligations of membership. The form of pledge which is set out in this Constitution, and which each of these defendant members gave at the time of his becoming a member and which is the basis of his right to make the claims which he now asks the court to enforce, is clear and unequivocal.

■ The officers of the International followed the prescribed procedure in making the charges, in considering the charges made, in the trials, and throughout the hearings with meticulous care. They reached their conclusions and based their findings on facts presented by the evidence that amply justify the decisions. There is nothing in the record that would justify a court of law in setting aside the findings of fact of this governing body of the union on the ground that the findings were either irregular, unfair or without basis of fact.

■ A labor union, like any other voluntary society that holds out plans and programs of mutual benefit to its members, has a right and a duty to the members to set up regulatory tribunals in order to discipline those who accept the privileges but ignore the obligations of membership and to protect the members who have subscribed to and are attempting to fulfill the precepts and principles of the organization. So long as these rules are reasonable and not contrary to public policy and the procedure may be simply adapted to the determination of complaints, they are entitled by law to be respected and upheld.

In the instant case, in reviewing the whole proceedings before the General Executive Board, this court cannot substitute its judgment on the facts for the judgment of the Board nor lightly set aside decisions of the General Executive Board and the General Executive Council which careful scrutiny indicates were clearly in conformity with the accepted procedure of the union as set out in the Constitution of the organization. Reigel v. Harrison, 6 Cir., 157 F.2d 140; Aulich v. Craigmyle, 248 Ky. 676, 59 S.W. 2d 560.

The constitutional provision that an appeal may be prosecuted to the Regular Convention is still available to the defendant members.

I must therefore conclude that the charges against the defendant members were justified; that the findings of the General Executive Board were lawful; and that disciplinary action was justified.

■ The next question in the case is much more serious. I have set out in this opinion the judgment entered by the General Executive Board in the case of the defendant, Wilford B. Sanders, who was barred from membership in the union for life. I recognize the rule that voluntary societies and associations have a right to regulate their membership and, under certain facts, to exclude them from membership for life. This rule has been followed without variation for many generations and it is only in exceptional cases that courts interfere with such disciplinary action on the part of governing tribunals of voluntary societies and associations. Bar associations and courts have a right to discipline the members of the legal

profession. This right is both statutory and inherent. Medical associations may expel their members for life. Other professions with societies, which are either voluntary or integrated by statute, have a legal right to discipline the members and to deny them membership for infringement of rules and disregard of regulations.

The right of lodges, clubs and societies to either exclude or expel individuals is generally upheld. The rule has been followed and applied to labor unions and organizations. Brotherhood of Railroad Trainmen v. Williams, 211 Ky. 638, 277 S.W. 500. From the standpoint of a workman in iron construction his union cannot be put upon the same footing as a lodge, club or society. In order to be employed, membership is almost a necessity and is no longer voluntary.

It is necessary that we take a realistic view of the situation that is presented and which prevails wherever labor is in demand. A labor union such as the International, while in name a voluntary association, is in fact a business institution that has for its product the furnishing of labor through its members. A labor union is a democratic institution. It is a self-governing body and the law recognizes that in order to fulfill its functions and protect the rights of its members, it must have authority through its governing body to classify and discipline its membership. Only in this way will it have power to bargain effectively with those seeking to purchase labor.

The Constitution and bylaws of the union are a contract and agreement with each individual member, but the disciplinary provisions of that contract must be reasonable.

The International covers the whole of the United States and parts of foreign countries. It would be difficult if not impossible for an iron worker to find employment without membership in this or a similar organization.

By the judgment of expulsion for life, Sanders, a man approaching middle age with a lifetime of experience in a chosen field, is for all practical purposes economically destroyed. It is true, as I have heretofore pointed out, that attorneys at law, physicians and other professional people may be expelled from their associations for life. Such instances are not analogous to the case of Sanders. Professional people are dealing with the rights and sometimes the health and lives of individuals of society and by membership in their respective associations are being held out by that association as competent and qualified. Expulsion of an offending member is not so much a matter of discipline as it is for the protection of society.

The authority for the sentencing of defendant members by the General Executive Board is found in the Constitution, Article XVII, Section 11, the pertinent portion of which reads as follows:

"* * * and it shall have power to impose such sentence as it may deem appropriate and just, including the power to expel a member and to revoke the charter of a local union."

This section places no limit upon the authority of the union tribunal to punish its members for insubordination or for infringement of the provisions of its Constitution. It must, however, be reasonably interpreted and applied in any given case. Any judgment or sentence under it may be examined by the court to determine whether or not that sentence or judgment is so extreme and severe as to be contrary to public policy. I am of the opinion that the expulsion of a union member for life or for such an unreasonable term of years as would have the effect of a life expulsion is an unlawful use of the authority given by this section and such a judgment must be declared void.

The sentence of Sanders was not a reasonable exercise of the authority of the General Executive Board. It was therefore unlawful and must be set aside.

The sentences of the other defendants, denying them the right to hold offices in

the union for a certain number of years, but permitting them to retain their union membership, seems to me to be entirely fair and proper.

■ It is the judgment of the court that the transfer of $30,000 from Local No. 595 to the Iron Workers Association, Inc. on December 9, 1953, was not lawful. Evidence was offered in the trial that the minutes of the meetings of Local No. 595 on October 17 and October 22, 1953, are incorrect. These minutes reflect that the motion to transfer the funds of the local to the Iron Workers Association, Inc. was carried unanimously at the October 17 meeting and was reaffirmed and unanimously approved at the October 22 meeting. Witnesses were offered by the plaintiffs who stated that they were at the meeting but did not vote for the transfer. They further stated, however, that they did not vote at all because they were intimidated.

■ The court must accept the minutes of the meetings as correctly reflecting the action taken. However, I am convinced, under all of the circumstances and facts reflected by the record, that the new corporation, the Iron Workers Association, Inc., was not formed for its stated purposes, but was formed to defeat the action of the International in dealing with the defendant members, and that a transfer of this fund, even though apparently unanimously approved at the time, was not done in good faith or to carry out the wishes of many of the members of Local No. 595. The Court recognizes the fact that at the time of these transactions there was a very unsettled condition among the membership of the local. It was dominated by these officers who had been called to account for their conduct by the officials of the International. It is contrary to reason and good common sense to assume that an established local union would deliberately divest itself and give away a large sum of money to a newly formed corporation to which many of the members did not belong and in which they had no real interest. This

action on the part of the local at its two meetings and its later transfer of funds was the direct result of the influence of the defendant officers, guided by passion and prejudice rather than reason, and amounted to duress in forcing the issue.

These funds should be returned to Local Union No. 595. All money and property in the possession of the defendant members should be returned and restored to Local No. 595 and to the supervision of officers of that union placed in charge of its affairs by the officials of International.

The defendant banks are directed to recognize no claim for the funds now in their custody as depositories except claims made by the officers of Local No. 595 in charge of its affairs by appointment of International or until such other officers are duly and regularly chosen.

The defendants, Percy B. Cloud, Edward W. Osborn, Homer Wyatt, Charles Culp, Charles E. Hutcherson and Cecil Biggs, should be enjoined from in any way interfering with Local Union No. 595 or its members or in assuming any rights to the collection of dues or the handling of its affairs until such time as the union may again declare them in good standing and subject to hold office or act in a representative capacity.

The attorneys for the plaintiffs in this action, No. 767, will prepare findings of fact, conclusions of law and judgment in conformity with this opinion. They will submit such findings to the attorneys for the defendants and to the attorneys for other corporations or individuals in any of the litigation in these consolidated causes. The findings of fact, conclusions of law and judgment will then be submitted to the court for examination and entry. Separate findings of fact, conclusions of law and judgment will also be prepared by the attorneys in No. 765 and No. 766 to be submitted in the same way as pointed out in No. 767.