## Clark, et al. v. Cooper, et al.

(Decided November 10, 1922.)

### Appeal from Pike Circuit Court.

1. **Mines and Minerals—Contract for Exploration of Oil and Gas—Damages.**—Where the whole compensation of a party under a contract for exploration of land for oil or gas depends upon the discovery of such minerals, no damages can be allowed for a failure to carry out the contract unless there is a showing that the land contained oil or gas, and in the absence of an averment in the petition that there was oil or gas in the land in such quantities as to make the royalty of value, a cause of action is not stated. But such an averment is not necessary where the action is not for damages resulting from a failure to carry out the contract but for damages caused by a refusal, after abandonment of the contract, to return property of value received thereunder.

2. **Trial—Transfer of Causes.**—Where an action was improperly brought in equity, the defendant by failing to object thereto until it was called for trial after thorough preparation as an equity case, nearly three years after it was filed, waived his right to have it transferred to the ordinary docket under section 10 of the Civil Code.

3. **Mines and Minerals—Assignment of Leases—Breach of Contract.**—Where plaintiffs assigned forty-two oil leases covering 18,691 acres of land to defendants which they represented to be good and valid leases, in consideration of defendants drilling wells thereon, and defendants discovered after beginning operations thereon within the time specified that a lease upon which they were preparing to drill covering 8,850 acres was invalid and the owner refused to permit them to drill thereon, this was such a substantial breach of the entire contract by plaintiffs as made it optional with defendants to rescind the contract in its entirety or affirm it as to the valid leases and sue for damages as for a partial breach; but the adoption of either course excluded the other; and if they desired to repudiate the contract it was incumbent upon them to so notify the plaintiffs and tender back what they had received under it with the right to recover what they had parted with or its value.

4. Mines and Minerals—Repudiation of Contract—Damages.—Where defendants repudiated the contract but refused to reassign the leases to plaintiffs, they were liable for any damages resulting to plaintiffs from such refusal.

5. Mines and Minerals—Leases—Election.—Under the facts of this case, plaintiffs had an election to sue for the leases or for the damages resulting from defendants' refusal to reassign them.

6. Mines and Minerals—Leases—Damages.—Where it was shown that the valid leases were worth $1.00 per acre and could have been sold for that amount by plaintiffs if defendants had returned them when demand therefor was made, and that leases covering 6,040 acres were valid at the time, plaintiffs proved damages amounting to $6,040.00, for which they were entitled to judgment.

7. Mines and Minerals—Lease—Breach of Contract—Damages.—Where it was conclusively shown that the defendant to whom the leases were assigned was vice-president of the corporate defendant and was acting for it in taking the leases, the latter is liable for a breach of the contract although it was a non-resident and had not obtained authority to do business in the state as provided by section 571, Kentucky Statutes.

S. S. WILLIS and W. K. STEELE for appellants.

E. J. PICKLESEIMER, JOHN D. CARROLL, ROSCOE VANOVER and R. H. COOPER for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

On January 24, 1917, the appellees, R. H. Cooper and D. H. Hatcher, assigned to the appellant, T. N. Clark, 42 oil and gas leases, covering 18,691 acres of land situated in Pike and Floyd counties, Kentucky, and which Cooper and Hatcher represented to be valid leases. In consideration of the assignment Clark agreed to pay, in addition to stipulated royalties, all the costs incident to the drilling of the first five wells on the leases, if such wells should be drilled, and "to pay all rentals beginning April 22, 1917, due thereafter on said leases until the completion of the first five wells," and he agreed "to begin work for operations on said leases within sixty days from the 24th day of January, 1917." It was further stipulated that:

"In the event that two wells shall have been drilled by party of the first part (Clark) on said leased premises, and both be unproductive of gas or oil in paying quantities in any of the oil or gas production sands, and the said first party shall desire to abandon the further prosecution of its work on said leased premises, then in that event the said first party shall assign to the

second parties all its right, title and interest in said leased premises; but if oil or gas is found in paying quantities in either of said two wells, then in that event said first party agrees to drill the said five wells, and if after drilling said five wells the first party does not desire to drill any more wells, then in that event said first party shall assign all its rights, title and interest to the parties of the second part.''

On July 26, 1917, Cooper and Hatcher instituted this action *in equity* against Clark and the Omar Oil & Gas Company, in which after setting out the contract above referred to they alleged that Clark in making the contract was acting for the oil and gas company and that it was a part if not the sole owner of the leases assigned by them to Clark and bound with him to perform his obligations under the contract. They further alleged that the defendants broke the contract in failing to drill within sixty days after January 24, 1917, two wells on the leased premises, or any well; that they failed to pay rentals to the lessors of the leases beginning April 22, 1917; that if defendants had assigned and transferred the leases back to them as they had agreed to do if they failed to begin work within sixty days, they could have sold the leases for $1.00 an acre; that they were worth that sum; that plaintiffs had demanded of defendants that they reassign the leases, which they refused to do; and that on account of their refusal to reassign the leases to them, covering 18,691 acres, plaintiffs had been damaged in the sum of $18,691.00. They prayed judgment against Clark and the oil company for $18,691.00 on account of their failure to reassign the leases to them. Other items of damage were asserted, but they need not be noticed as they were not proven and have been abandoned.

Clark and the oil company filed separate answers. Clark by his answer admitted the execution of the contract and his failure to drill any wells on any of the leased premises, and plead in justification thereof that plaintiffs had procured the execution of the contract by fraudulently representing that the leases were valid and covered adjoining lands; that the lands did not adjoin but were widely separated; that within the sixty days he made a location for a well on one of the leases assigned to him by plaintiffs, contracted for the lumber to erect thereon a drilling derrick, ordered the necessary iron therefor, and in good faith attempted to commence drilling on this land; that the owner, James Hatcher, refused

to permit him to do so because the lease on his land had been forfeited by the failure of Cooper and Hatcher to pay the rentals due thereon January 22, 1917; that this lease covered 8,850 acres, or nearly half of all of the land covered by the leases assigned to him by plaintiffs; and that his failure to comply with his contract as he in good faith attempted to do was occasioned solely by the fact that the leases assigned to him were null and void and not good and valid leases as represented. He alleged an expenditure of $2,500.00 in the effort to comply with the contract, for which he asked judgment against plaintiffs.

The oil company by its answer denied that it had anything to do with or was a party to the contract between Clark and the plaintiffs, but neither defendant denied the allegations of the petition that after defendants refused to drill plaintiffs demanded the return and reassignment of the leases to them which was refused.

After plaintiffs by reply had traversed the affirmative allegations of Clark's answer, thus completing the issues, proof was taken by deposition and the case set for trial before a special judge at a special term of the court called to try this and other cases, in which presumably the regular judge was disqualified to act.

When the case was thus called for trial, the defendants moved to transfer it to the ordinary docket and for a trial by a jury, which was overruled and a judgment rendered for plaintiffs in the sum of $8,800.00, from which the defendants appeal.

Numerous grounds are urged for reversal, which may be summarized and will be discussed under the following heads:

(1) The court erred in overruling a demurrer to the petition.

(2) The court erred in refusing to transfer the case to the ordinary docket for trial by a jury.

(3) The first breach was by plaintiffs, and it was such as amounted to a total failure of consideration and excused defendants from every obligation to perform.

(4) There was no evidence of damage.

(5) That the defendant oil company was not a party to the contract and is not liable in any event because it was not authorized to do business in the state.

1. We have held, in acordance with a rule generally recognized, that where the whole compensation of a party under a contract for the exploration of land for oil or gas depends upon the discovery of such minerals, no damage

can be allowed for failure to carry out the contract unless there is a showing that the land contained oil or gas and that as a consequence in the absence of an averment in the petition that there was oil or gas in the land in such quantities as to make the royalty of value there was a failure to state a cause of action, and it was error to overrule a demurrer thereto. Duff v. Bailey, 89 S. W. 577, 29 K. L. R. 919; McClay v. Western Penn. Gas Co., 201 Pa. St. 197; Grass v. Big Creek Development Co., 75 W. Va. 719, L. R. A. 1915E, 1057; Steele v. American Oil Development Co., 80 W. Va. 206, L. R. A. 1917E, 975; Thornton, Law of Oil & Gas, 3rd ed., vol. 1, pp. 178-179.

It is upon these authorities the claim is made that the petition did not state a cause of action, but the question as to whether or not there was oil or gas in the land is not an issue in this case since no claim of damages is based upon a failure to receive royalties. The principal item of damages asserted, and the only one with which we are now concerned, is based not upon defendants' failure to drill but upon their failure and refusal either to pay rentals accruing after April 22, 1917, as they had agreed and which was necessary to prevent a forfeiture, or to reassign the leases to the plaintiffs so that they could make the payments.

The law is well settled as will later appear, and it would be strange indeed if it were otherwise, that defendants could not abandon the contract even though justified in so doing, and at the same time retain what they had received thereunder from plaintiffs; and it is perfectly clear we think that the petition stated a cause of action for the damages alleged to have been so inflicted upon them, hence the court did not err in overruling the demurrer thereto.

2. As the action was instituted to recover damages for breach of contract, it is clear it should have been filed in ordinary rather than in equity, and that the defendants could have had it transferred to the ordinary docket for a trial by jury if they had seasonably moved therefor; but this they did not do, as they offered no objection when the issues were being formed, while the proof was being taken by deposition as though it were an equity case, or until it was called for trial as such. This was on May 17, 1920, and nearly three years after the action had been filed.

Under all the authorities in this state at least the defendants thereby waived their right to have the case

transferred to the ordinary docket under section 10 of the Civil Code, and the court did not abuse a sound discretion in denying the motion when made. Strong v. Kentucky River Hardware Co., 189 Ky. 529, 225 S. W. 358, and the cases therein cited.

3. We cannot determine from the evidence just how many of the leases already had been forfeited by plaintiffs' failure to pay rental as provided before the execution on January 24, 1917, of the contract with defendants, but it is certain that the James Hatcher lease covering 8,850 acres of land was in this condition, and even conceding that the other leases at that time were valid, we think it is too clear for argument that this was such a substantial breach upon the part of the plaintiffs of the entire contract as, under all the authorities made it optional with the defendants to rescind the contract in its entirety or continue it in force as to the valid leases and sue for damages as for a partial breach; but that the adoption of either course excluded the other, and that if they desired to repudiate the contract it was incumbent upon them to so notify the plaintiffs and tender back what they had received under it with the right to recover what they had parted with or its value. 13 C. J. 611; 6 R. C. L. 972, *et seq.*, and the many cases cited therein.

What defendants did was to refuse to drill any wells or to pay any rentals, which was all they ever agreed to do, and to notify the plaintiffs that they did not intend to further attempt to perform any of their contract obligations; but, as we have seen, it stands admitted on the pleadings, they also refused to reassign the leases to the plaintiffs when demand was made of them therefor. Unquestionably this indicated an election by defendants to rescind the contract in its entirety. Moreover, the plaintiffs just as plainly indicated their consent to a rescission by then demanding a return to them of the leases defendants had obtained under the contract and to which they otherwise had no right whatever.

In these circumstances it seems clear that the contract was terminated by mutual consent because of plaintiffs' breach thereof, and that all that remained to be done was to restore the *statu quo*. To do that defendants certainly ought to have reassigned the leases, and plaintiffs should have paid them whatever, if anything, they had expended in attempting to carry out the contract before the rescission.

Defendants not only refused to reassign the leases when demand was made therefor, but they never have offered to do so and still have them, except as it is shown that they returned some of them to the original lessors and took new leases in their own names without the consent or knowledge of plaintiffs.

Under such circumstances it surely was not incumbent upon plaintiffs to pay the rentals accruing after April 22, 1917, in order to prevent a forfeiture of the leases which might or might not have accrued to their benefit. And as no such claim is made, we shall assume, as we think is true, that plaintiffs had an election either to sue to compel a reassignment of the leases to them or for damages resulting from defendants' refusal so to do. So while it is true that defendants were excused from a performance of the contract by plaintiffs' breach thereof, it does not follow as they contend that they are not liable for whatever loss, if any, plaintiffs suffered by reason of their refusal thereafter upon demand to reassign the leases to plaintiffs. In our judgment just that and no more is now involved in this action, since there is no proof to sustain defendants' charge of fraud by plaintiffs in the execution of the contract, or to sustain other items of damages asserted by the plaintiffs.

4. Plaintiffs proved without contradiction that the valid leases were worth, and they could have sold them for $1.00 an acre at the time the defendants refused to reassign them, or at any time thereafter before they were forfeited; and it was admitted in the evidence for defendants that on April 22, 1917, when it became their duty under the contract to pay the rentals on the leases, the leases on 6,040 acres of land were good and valid, although they had pleaded all of the leases had been theretofore forfeited by plaintiffs' failure to pay rentals due thereon. Hence, unless the forfeiture which resulted before that date from the failure of the plaintiffs to pay rentals as they had agreed to do on the 12,651 acres of leases not only excused the defendants from drilling at all but also excused them from paying the rentals on or returning the valid leases, which as we have seen is not true, it is clear that their own evidence authorized a judgment for $6,040.00 against them. There is therefore no merit in the contention there was no proof of damage; and in our judgment this is the sum for which judgment should have been given rather than $8,800.00, because the evidence does not show that there were as many as 8,800

acres or more than the admitted 6,040 acres of valid leases on April 22, 1917. Even the evidence for plaintiffs shows that there were not more than 6,981 acres of valid leases on April 22, 1917, and does not contradict the evidence of defendants that this acreage of valid leases amounted to only 6,040 acres. The defendants were not entitled to recover the claimed $2,500.00 or any sum by way of counterclaim for expenses in attempting to drill on the James Hatcher lease, for the simple reason there was no proof whatever of what, if any, that expense was.

5. The evidence shows beyond a doubt that Clark, who was vice-president of the defendant oil company, was acting for it in making the contract with plaintiffs, and that it was at least a part, if not the sole owner, of the leases assigned to Clark and liable with him for any actionable breach thereof, unless the fact that it was not authorized to do business in this state at the time the contract was executed rendered it not liable.

It is conceded by counsel for plaintiffs under authority of Warren Oil & Gas Company v. Gardner, 184 Ky. 411, 212 S. W. 456, and Yewell v. Board, etc., 187 Ky. 434, 219 S. W. 1053, that the fact the oil company when sued had not complied with section 571, Kentucky Statutes, so as to entitle it to do business in the state would have been no defense to this action if it had admitted that the contract was executed by Clark for it. But it is contended that the rule is otherwise under authority of St. Clair v. Cook, 106 U. S. 351, because of the fact that it denied that Clark, its vice-president, was authorized to make the contract for it. Whether the corporation admitted the execution of a contract or its execution was proven by the adverse party could not of course be material, and since plaintiffs proved beyond a shadow of doubt that in executing the contract Clark was the authorized agent of the oil company and acting for it, it is bound by the terms of the contract, notwithstanding its failure to comply with the provisions of 571, *supra*.

For the reasons indicated, the judgment is reversed, and the cause remanded with directions to enter a judgment for the plaintiffs against both defendants for the sum of $6,040.00 with interest from July 26, 1917, the date the suit was filed, and for their costs in the lower court.