## Ross v. Riedley Motor Co. et al.
(Decided Nov. 9, 1938.)

L. D. GREENE and J. J. SAVAGE for appellant.

HUBERT SIRLES for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

In April, 1934, the appellee Charles J. Riedley maintained in Louisville, Kentucky, a garage and sales agency for the Hudson Motor Company for the sale and servicing of the said motor company's Terraplane automobiles. The appellee maintained and operated this business under the name of the Riedley Motor Company.

On April 25, 1934, he sold to the appellant, Ross, a Terraplane automobile for the cash price of $800.

This automobile, Riedley testifies and admits, was sold and delivered by him to the appellant, Ross, at his garage with a written warranty—described as being the regular manufacturer's warranty—by which he warranted that the new passenger automobile sold Ross was free from defects in material and workmanship under normal use and service and further reciting that the seller's obligation under the warranty was "limited to making good at our factory any part or parts thereof, including all equipment or trade accessories (except tires) * * *, which shall, within ninety days (90) after making delivery of such vehicle to the original purchaser or before such vehicle has. been driven 4,000 miles, whichever event shall first occur, be returned to us with transportation charges prepaid, and which our examination shall disclose to our satisfaction to have been thus defective; this warranty being expressly in

lieu of all other warranties expressed or implied and all other obligations or liabilities on our part."

The seller, Riedley, states that this warranty, described as a manufacturer's warranty, was given by him to the appellant, Ross, upon his sale and delivery of the car to Ross.

The purchaser, Ross, complains that this car, sold him with such warranty, was found by him, within a few days (or within much less time than the ninety day warranty period), to be defective in its construction, parts and equipment, in various named particulars, of which he then complained to the seller and repeatedly returned the car to him at his garage that he might correct the defects and reservice the car, so as to make it comply in its mechanical condition and operation with his warranty.

Further the proof is that Ross continued, for nearly two years next following his purchase of the car, to take it back to the seller for the purpose of having its defective construction and parts repaired and made to properly function, which the seller as often unsuccessfully attempted to repair and correct.

Further, it is shown that practically all during this two year period, or except when the car was for brief periods put in Riedley's possession for repairs, it was kept in daily service and use by purchaser for carrying him to and fro, from his home in Fisherville, Kentucky, to his place of employment in Louisville and that by reason of such continued daily use made of it, appellant had run the car something over 14,000 miles and had thereby reduced both its condition and value to that of a secondhand car, in that its tires were practically worn out and many of its mechanical parts, such as the engine, starter, gears, connecting rods, etc., complained of by purchaser as defective and not up to warranty standard, were broken and the car incapable of properly functioning.

At such time and under such circumstances, after having thus used the car nearly two years, the appellant, contending that the car sold him had always been substandard and defective and unfit for the purpose for which sold him and that the seller had been, throughout this two year period, unable to repair its defects, notwithstanding the many and repeated opportunities

given him to do so, returned the car to seller, demanding a cancellation of the sale and purchase contract and a return of the full purchase price paid the seller therefor.

Such demand being refused by the seller, Ross nevertheless left the car with him at the seller's garage, over the protest of seller, and thereupon instituted this action, wherein he alleged the facts in substance as hereinabove set out and prayed for the relief demanded by him of cancellation of the sales contract for the car and restitution to him of the purchase price of $800 paid therefor.

Later amending his petition, plaintiff made the Hudson Motor Company, as being the principal in the car sale and the warrantor of the defective car, sold by its agent, Riedley, co-defendant with the Riedley Motor Company and Charles J. Riedley.

No service of summons was had upon the Hudson Motor Company, but same is immaterial, in that the warranty herein sued on, it is admitted, was given by the seller Riedley, and not by the Hudson Motor Company, to the appellant, Ross.

Riedley filed answer and counterclaim, wherein he first traversed the allegations of plaintiff's petition and affirmatively pleaded that no complaints were made by purchaser of the car as being defective until long after the period of time covered by purchaser's warranty and not until after purchaser had injured and damaged the car by subjecting it to abuse and lack of proper care, which caused the defects in the car, alleging that it was returned and left by plaintiff at his garage against his will, after plaintiff had misused same for a period of nearly two years.

A reply made up the issues, when the case was ordered referred to the official court reporter for the taking of proof in support of the issues joined by them.

The proof for appellant was that the car was never, either when sold him or afterwards, when the seller had made repeated attempts to repair it, a car in good mechanical condition, as it was by seller warranted to be, nor was it ever, either when delivered to him or afterwards, fit or suitable, or made so by seller, for the use and purposes for which bought by appellant, in that the

car, when delivered and within less than thirty days thereafter, was discovered to have a defective engine, causing the bar to badly jump and jerk when being driven; that its body leaned heavily to the left when the car was being used; that its self-starter was so defective that it would not start the car unless specially serviced; and also that the car was out of line, making it hard to drive in a straight course, as it "shimmied" when being driven.

On the other hand, the proof for the defendant was that the car had been badly abused in its use by appellant and his neglect and failure to keep it properly greased or cared for; that this neglect caused the wearing and breaking of the parts of the car complained of as defective and was entirely due thereto, as the car sold plaintiff was, upon its delivery to him, in its mechanical condition, parts and equipment as warranted to be when sold appellant.

However, as against this contention and testimony of the defendant is his admission, made in an affidavit introduced in evidence, that shortly after his selling of the car to appellant in April, 1934, or within thirty days thereafter, the appellant returned the car to him, complaining that it was not at all satisfactory, but that he, upon checking the car, had found nothing definite in the way of a defect; that again, and almost immediately thereafter, the purchaser returned the car to him, registering his complaint that it was defective, when he then, before the car had been driven 4,000 miles, upon examination found that its steering was decidedly jerky; that the car was apparently out of line and seemingly sprung; also, that the purchaser repeatedly thereafter brought the car back to him to repair its complained of defects, but that notwithstanding his effort to do so, he had not been able to put the car in first class shape; that shortly after its purchase by Ross, he had called the district representative of the Hudson Motor Company to confer about its condition, who had recommended the installation of certain new parts, but that they had proved to be unsatisfactory; further that the appellant's Terraplane car was the only one which he had sold to give him trouble and that while unable to point out directly what the trouble was, he believed the car should be considered "factory defective."

The learned chancellor, upon the pleadings and this

proof, adjudged that both plaintiff's and defendant's petition and counter-claim be dismissed and that each party pay his own costs, at the same time filing an opinion, which was made a part of the record, wherein the chancellor set out his findings and the principles of law upon which his ruling was based as follows:

"This case is submitted in chief. Plaintiff after driving an automobile about two years—covering 14,000 miles in the process—wants to turn it back for breach of warranty, and wants to recover the entire purchase price; he excuses delay by continued efforts of defendant to make the machine operate to the satisfaction of plaintiff.

"Defendant counterclaims for storage after car was turned back to him.

"In 72 A. L. R. 745, note c, is found the following statement of the rule:

" 'The proposition is well established that the delay by the purchaser in rescinding the contract of purchase of a chattel will be excused if it is due to acts or declarations of the seller, as his promises or attempts to remedy defects, requests for the purchaser to make further trials, etc.; *or at least these matters are proper to be taken into consideration in determining whether the offer to rescind was made within a reasonable time.*' (Italics mine.)"

The plaintiff has appealed from this finding and ruling of the court and asks its reversal upon the ground that although the general rule is that where the buyer seeks to rescind a contract of sale, because of a discovered breach of the warranty made by the seller and on the ground of material misrepresentations having been made him in its sale, whether fraudulently or honestly made, the buyer must assert his right promptly upon discovery of the breach, or otherwise be deemed to have waived it (Farmers' Trust Company v. Threlkeld's Adm'x, 257 Ky. 211, 77 S. W. (2d) 616; 24 R. C. L. 573; Williston on Contracts, vol. 3, section 1500, page 2668) the facts of the instant case bring it within the rule, equally as well established as the rule itself, as announced by the learned chancellor in his quotation from the annotation found on page 745 of 72 A. L. R. and which rule was applied by this court in the case

of International Harvester Company v. Bean, 159 Ky. 842, 169 S. W. 549, and also in Leming v. Howell, 198 Ky. 81, 248 S. W. 253, holding that delay by buyer in the exercise of his right to rescind the contract of purchase, caused by the seller's request to be given a chance to remedy the defects of the machine sold, does not prevent rescission, the language of the latter opinion to such effect being that "the retention of possession of the machine under such conditions does not, no matter how long continued, operate to estop the purchaser from returning the machine and demanding a rescission of the contract, including a return of his money paid for the machine, in the absence of intervening equities. DeBaun v. Weaver, 190 Ky. 685, 228 S. W. 27; Barnard v. Napier, 167 Ky. 824, 181 S. W. 624; Hauss v. Surran, 168 Ky. 686, 182 S. W. 927, L. R. A. 1916D, 997; J. I. Case Threshing Machine Company v. Walers Brothers, 197 Ky. 348, 246 S. W. 831; 35 Cyc. 542-548." [page 254.]

Conceding that such is the well-established exception to the rule and would be controlling in the instant case, if the other facts of the case were analogous with those recited in the above cited cases where it was applied, it is to be noted that in those cases the buyer, seeking to rescind the contract despite his delay in attempting to exercise his right of rescission, had remained throughout the period of his delay in a position, upon returning the defective machine sold him, to restore the status quo of the parties.

Clearly such fact distinguishes those cases from the instant one, wherein the appellant is not in a position, upon his return to seller of the car sold him some two years before and after subjecting it to some 14,000 miles of travel, in good measure wearing out its equipment and converting it in appearance and value, into practically a secondhand car, to now restore seller to his former position by returning the car to him and demanding restoration of the full purchase price paid therefor.

While recognizing that the right of rescission by the buyer of a contract of sale and purchase, with recovery of purchase price, may be in proper instance an available remedy to the buyer for a material breach by seller of his warranty (Clark v. Cooper, 197 Ky. 530, 247 S. W. 929) there is yet a substantial limitation upon

the buyer's right to cancel his contract, which is, that it will only be permitted where his equitable right to do so is clearly manifested. Reid v. Wilder, 204 Ky. 395, 264 S. W. 849.

By the proof, and also the findings of the chancellor, clearly the appellant here has manifested no such equitable right to rescind his purchase contract and now recover of seller the full purchase price paid upon the terms he now seeks to exercise his right, of returning to seller the car when not in the same condition or of the same value as when sold him, but after it, during the two years he retained the car, had been driven some 14,000 miles, in good measure wearing out its mechanism and equipment and making of it practically a secondhand car or a car of very greatly depreciated value.

The equitable principle and rule of permitting a rescission of a contract for material breach of a warranty is, as above stated, limited to those cases where the one seeking such right or remedy clearly manifests an equitable right thereto.

The well established rule, applicable in such case, is thus stated in 12 Am. Jur., section 451, page 1031:

"The very idea of rescinding a contract implies that what has been parted with shall be restored on both sides. Releasing one party from his part of the agreement and excusing him from making the other party whole do not seem agreeable to reason or justice. Hence the general rule is that a party who wishes to rescind an agreement must place the opposite party in statu quo."

In the light of this lucid statement of the operative principle of this rule, that rescission is granted upon the condition that justice be worked out by placing both parties in statu quo, we entertain no doubt as to the propriety of the chancellor's ruling, that buyer should not now be permitted to rescind the contract after so long retaining and using the car sold him. Such is our view, not so much by reason of the length of time appellant continued to use the alleged defective car sold him, since the delay might have been caused, according to the evidence, by the seller's continued requests that he be given further opportunities in which to rectify the condition of the car, so as to make it conform with the warranty under which sold, but upon the ground that

the appellant (by reason of his long and to him valuable use of the car, as a means of travel between his home and place of business, for nearly two years, wherein it appears he drove the defective car some 14,000 miles, had profited thereby and likewise so depreciated the value of the car) was not in a position when he desired to cancel his contract of sale, to place his seller in statu quo when returning the car to him.

Under such circumstances, the plaintiff not being entitled to a rescission of the contract at the time he attempted to return his car but left same at the garage of appellee against his consent, by reason of which he was required to take charge of and store the car in his garage for some months, it would appear, the return of the car to him being unlicensed, that the seller would be permitted, as held by the court, to recover of appellant the reasonable value of this storage service rendered appellant by him.

It is further our view, however, that notwithstanding the chancellor properly adjudged that appellant was without the right to rescind the contract and also that the defendant was entitled to recover his storage charges counter-claimed for, he yet found that appellant was entitled to recover for a breach of the warranty, though there was no evidence before the court as to the amount of damages suffered by appellant by reason thereof, in that he found that appellant's claim therefor and appellee's counter-claim were about equal and should be treated as off-setting each other and therefore dismissed both the petition of plaintiff and the counter-claim of defendant.

It is our conclusion that the court erred in failing to make provision by his order for the appellant to establish in a common law action, seeking recovery of damages for appellee's alleged breach of warranty, the amount of his damages and in dismissing the action as improperly seeking the exercising of the right to rescind.

Therefore, we conclude that the judgment to such extent should be reversed, with directions that upon a return of the case to the lower court, the plaintiff be permitted to reform his suit so as to present his claim for damages for breach of warranty in a common law action seeking a recovery of damages therefor.

Judgment reversed.