## Moses v. Campbell.

October 17, 1947.

Flem D. Sampson, Judge.

Stephens & Steely for appellant.

Walter B. Early for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

This suit and counteraction to quiet title was resolved into the proper location of a division line between the parties and that is determinable upon the finding of a common corner.

In 1829 a tract of 200 acres was patented to Thomas Marlowe. In 1839 a 50-acre tract abutting it on the north was patented to William Perkins. In 1855 a 25-acre tract adjoining the Marlowe property on the east was granted by Whitley County to Emaline Taylor. In 1869 Gabriel Stephens received conveyances of both the Marlowe and Taylor tracts. Whether those deeds gave him good title or not seems now to be beside the point. In 1891 in an action between Stephens' heirs and George H. Campbell's heirs, the combined tract was sold and a conveyance made by the master commissioner to Ambrose Campbell. He took possession and farmed it, at least under color of title, until 1932. On February 9, 1932 Ambrose Campbell conveyed 70 acres to his son John B. and 65 acres on the east to his son William J. Campbell. The beginning corner and dividing line in both deeds was thus given, "Beginning on a white oak (or stone) near where the road forks; thence south" to Jellico Creek or beyond it. The deed to William J. Campbell embraced all of the 25-acre Taylor grant and land east of it which the grantor, Ambrose Campbell, had acquired from some other source. The beginning point of the Marlowe patent was "a white oak near where the road fork leading from Isaiah Meadows"; but that of the Taylor grant was "a white oak, corner of the original survey." The next to the last corner in the Perkins patent was "a white oak, a corner of said old survey," referring to the Marlowe survey. Thus it will be seen that the white oak was a common corner to all three patents.

In 1933 John B. Campbell conveyed the 70 acres which he had acquired from his father to W. R. Moses, the beginning point of the description being the same. About nine years later a dispute arose between Moses and William J. Campbell as to their division line. They agreed to have a survey made by Sam Rains. But Moses refused to accept the survey, contending, as we understand, that the beginning point was about S. 60 E. 50 poles distant from the one used by Rains. Such a location would give Moses a strip of land claimed by Campbell. Much testimony was given in the suit which followed. Most of it relates to questions of title. Among the witnesses on the issue of the location of the ancient landmark (a white oak for which a stone had been sub-

stituted) and the dividing line was Ambrose Campbell, the immediate grantor of one of the parties and the second back of the other party. Upon his testimony and that of other witnesses, including the surveyor, the court fixed the point and the line as claimed by William J. Campbell. The appeal is brought by Moses.

The argument in this court, as it was below, partly relates to the issue of title. This case is ruled by Reynolds v. Cobb, 286 Ky. 329, 150 S. W. 2d 702, where there was a strikingly similar situation and controversy. We held the sole question to be the true location of the line between the parties. It is almost impossible to determine from the record where the white oak would be placed were it not at the point contended for by the appellee and found by the chancellor. The sole physical fact produced by appellant in placing the oak elsewhere is the testimony that it stood "near the forks of the road." Conceding this to be true, it is apparent that the road had several forks along here, and that the appellee's location might also lie near the forks of the road. The record quite certainly locates the corner of the William Perkins grant, and its calls plot out successfully. If the white oak should be placed to the southeast where the appellant contends, the Perkins grant would be pulled down well south of the creek and its other calls. Indeed, the appellant does not direct us to any evidence which creates more than a doubt as to the correctness of the chancellor's finding.

The contention is made that the court erred in overruling several motions to transfer the case to the ordinary docket in order that the location of the line might be established by a jury. The first of these motions came with the filing of an amended answer. The original answer had been filed one year before and depositions had been taken meanwhile. The motion came too late and was properly overruled. Strong v. Kentucky River Hardwood Co., 189 Ky. 529, 225 S. W. 358; Clark v. Cooper, 197 Ky. 530, 247 S. W. 929.

The judgment is affirmed.